IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| EUGENE THYE BONNER, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-2137 |
| | : | |
| MR. JOHN E. WETZEL, *et al.*, | : | |
| Defendants. | : | |

**FILED**

MAY 3 1 2019

KATE BARKMAN, Clerk
By_____ Dep. Clerk

**MEMORANDUM**

RUFE, J.   MAY 31st, 2019

Plaintiff Eugene Thye Bonner, a prisoner incarcerated at SCI Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against prison officials and medical staff employed at the prison. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Bonner leave to proceed *in forma pauperis*, dismiss his official capacity claims with prejudice, dismiss certain of his claims without prejudice to amendment, and permit him to proceed on claims against three of the eight named Defendants for deliberate indifference to his medical needs.

**I.   FACTS**

Bonner's Complaint raises Eighth Amendment claims based on allegations that he was assaulted by another inmate on January 24, 2018 while incarcerated at SCI Graterford and denied proper medical care for his injuries. He named as Defendants: (1) John E. Wetzel, Secretary of Corrections; (2) Cynthia Link, Superintendent of SCI Graterford; (3) Mr. Joseph C. Korszniak, identified as a corrections health care administrator at SCI Graterford; (4) Mr. R. Carla; (5) Ms. Voltz, identified as a nurse; (6) Dr. Golsork Muhammad; (7) Dr. Kaminsky; and (8) Correctional

1

Officer Buchler. Bonner sued all of the Defendants in their individual and official capacities. He seeks compensatory and punitive damages.

Bonner alleges that Buchler failed to protect him by "allow[ing] [him] to be attack[ed] by [an] inmate." (Compl. at 7.)[1] It appears he faults Defendant Carla for the assault as well based on his allegation of "custom and control by Mr. R. Carla also." (*Id.*) He adds that Carla "left blood running down [his] face, [and] order[ed] for [him] to be sen[t] L-block RHU." (*Id.* at 8.) Bonner sustained injuries to his face including a stab wound near his eye and a cut from his eye to his nose that left him permanently disfigured. The Complaint suggests that Bonner was taken for medical treatment after the attack and that Nurse Voltz denied him an x-ray "or access to hospital or medical treatment." (*Id.*)

It appears Bonner submitted a grievance and Korszniak denied the grievance. (*Id.* at 9.) Bonner attached copies of grievances to his Complaint, which are directed to Wendy Shaylor, but which may also have been directed to Korszniak. In two grievances dated February 12, 2018, Bonner alleged that he did not received treatment for his injuries after the attack and that an eye doctor from the medical department suggested he be seen by an outside doctor for glaucoma as a result of damage to his retina. (*Id.* at 19 & 21.)

On March 8, 2018, Bonner saw Dr. Muhammad, who confirmed that the cut on his face was permanent but "fail[ed] to report this to his supervisor, fail[ed] to give [him] [an] x-ray or and never request[ed] for [him] to be seen by plastic surgery doctors." (*Id.* at 9.) Bonner alleges that on the same date, he spoke with a counselor about the injury to his face and that the counselor told Bonner he would email Korszniak. The next day, Korszniak responded and

---

[1] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

denied him certain medical treatment, *i.e.*, surgery to "[have the] disfigurement remove[d]" and/or "surgery glaucoma [in his] eye removed." (*Id.* at 7-8.) Bonner adds that on March 9, 2019, he saw Dr. Kaminsky, who also confirmed that the cut was permanent. Bonner alleges that Dr. Kaminsky "failed to review [his] prison medical file" which would have revealed he had macular hole surgery in 2010, and previously had twenty-twenty vision. (*Id.* at 9.)

Bonner was taken to Wills Eye Hospital on March 27, 2018 because his vision was "going in and out." (*Id.* at 12.) Bonner saw a doctor who informed him that the tissue in the back of his eye was damaged. Bonner was taken back to Wills Eye Hospital in May and November of 2018. (*Id.* at 7.) It appears that on May 3, 2018, a doctor at Wills Eye recommended surgery for cataracts, and that on November 7, 2018, a doctor at Wills Eye confirmed that the back of Bonner's eye is permanently damaged. During the November 7, 2018 visit, the doctor informed Bonner that the damage was caused by the assault and also recommended surgery. Bonner now suffers from glaucoma and permanent vision loss.

Bonner alleges that Wetzel "created a policy or custom under which [his] constitutional rights were violated by hiring unqualified people" and that Link "fail[ed] to adequately train the staff" and failed to discipline staff or ensure that prison policy was being followed. (*Id.* at 8.) Bonner further alleges that he spoke to Wetzel on November 19, 2018 about his eye injury.

## II. STANDARD OF REVIEW

The Court grants Bonner leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a

---

[2] However, as Bonner is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Bonner is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Official Capacity Claims

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, as Bonner's official capacity claims are essentially claims against the Department of Corrections, which are barred by the Eleventh Amendment, the Court will dismiss those claims with prejudice.

4

## B. Claims Against Wetzel and Link

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[3] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). However, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a

---

[3] The Complaint indicates that Bonner is a convicted and sentenced prisoner, (Compl. at 8), so the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

5

constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . ." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Bonner's allegations against Wetzel and Link are insufficient to state a plausible claim against them. Bonner alleges that Wetzel "created a policy or custom under which [his] constitutional rights were violated by hiring unqualified people" and that Link "fail[ed] to adequately train the staff" and failed to discipline staff or ensure that policy was being followed. (Compl. at 8.) These allegations are brief and conclusory and do not provide sufficient factual development to support a plausible inference that Wetzel's and Link's actions or failures to act

6

were responsible for the claimed constitutional violations. Bonner's allegations also appear to conflict; it is not clear whether he is claiming that his rights were violated as a result of a prison policy or because untrained staff failed to follow an unspecified policy. Furthermore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train" and no such pattern is alleged here. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotations omitted). Nor are any other facts alleged that would plausibly support a conclusion that Wetzel's and Link's deliberate indifference in managing SCI Graterford caused the events of which Bonner complains.

Although Bonner alleges that he spoke with Wetzel about his injuries in November of 2018 during Wetzel's visit to SCI Graterford, his allegations do not support a plausible claim against Wetzel for deliberate indifference to his serious medicals needs. First, by that point, the Complaint makes clear that Bonner was receiving some amount of care, including from specialists at Wills Eye, for his vision issues. If Wetzel was aware of that fact or became aware of that fact, it would be difficult to conclude that he acted with deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."). In any event, the content of Bonner's conversation with Wetzel is not clear, contributing to the conclusion that Bonner's claim against Wetzel is not plausible.

In sum, Bonner's allegations against Wetzel and Link are not sufficiently developed to support a plausible claim against either Defendant. Accordingly, the Court will dismiss Bonner's claims against those Defendants.

7

### C. Claims Against Buchler and Carla

The Court understands Bonner's claims against Buchler and Carla to be based on a theory that those Defendants failed to protect him from the assault by another inmate. As noted earlier, to state an Eighth Amendment claim for failure to protect, a plaintiff must sufficiently allege that prison officials were deliberately indifferent to his health or safety. *Farmer*, 511 U.S. at 837.

The entire basis for Bonner's claim against Buchler is that Buchler allowed him to be attacked by another inmate. Bonner does not provide any additional allegations about how the attack came about, what Buchler was in a position to see or do, or what Buchler did or did not do in connection with the attack to "allow" it. Without additional factual allegations, Bonner's failure to protect claim against Buchler is not plausible. *See Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) (per curiam) (affirming dismissal of complaint where "even if the prison guards were present during the attack, no facts indicate that they had a realistic and reasonable opportunity to intervene" (internal quotations omitted)); *Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011) (per curiam) (affirming dismissal of failure to protect claims where "[t]here is no suggestion that the Defendants had any prior warning or knowledge that Carter might be involved in an altercation with Nguyen, or that they were aware that Carter's cell door was unlocked"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Bonner's claims against Carla are also vague and undeveloped. It is not clear what Bonner means by his allegation "custom and control by Mr. R. Carla also," (Compl. at 7), so any claim based on that allegation fails. It appears Carla was involved in events after Bonner was attacked and is alleged to have "left blood running down [Bonner's] face, [and] order[ed] for

8

[Bonner] to be sen[t] L-block RHU." (*Id.* at 8.) It is possible that Bonner intends to bring a claim against Carla for deliberate indifference to his medical needs based on that statement. However, the Complaint reflects Bonner was taken to the medical department and seen by Nurse Voltz on the date of the attack; it is not clear when that occurred relative to Carla's involvement. Due to the minimal allegations and lack of clarity surrounding Bonner's claims against Carla, the Court concludes that Bonner has not stated a plausible basis for a claim.

### D. Claims Against Korszniak

Bonner's allegations against Korszniak are essentially that Korszniak denied grievances related to his medical care and did not take steps to provide care requested by Bonner after he was apparently dissatisfied with Dr. Muhammad's care and reached out to a counselor. However, Korszniak is identified as an administrator, not a doctor or someone with medical knowledge. Furthermore, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam). Additionally, "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). In sum, the Complaint does not state a plausible basis for a claim against Korszniak.

### E. Claims Against Nurse Voltz, Dr. Muhammad and Dr. Kaminsky

The Complaint indicates that Nurse Voltz, Dr. Muhammad, and Dr. Kaminsky are the named Defendants with medical training, the most knowledge of Bonner's injuries and condition, and the most capable of taking action related to his treatment. Liberally construing the Complaint, Bonner has alleged facts suggesting that these Defendants observed, examined,

9

and were aware of his injuries and the extent of those injuries, and either did not provide medical treatment or did not provide the treatment that Bonner claims was required. Bonner's claims are supported by allegations that other doctors concluded that the assault damaged Bonner's eye and recommended surgery. Liberally construing the Complaint and taking all inferences as true as the Court is obligated to do at this stage of the litigation, Bonner has alleged sufficient facts to proceed on his claims against these three Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Bonner leave to proceed *in forma pauperis*, dismiss his official capacity claims with prejudice, dismiss his claims against Wetzel, Link, Buchler, Carla, and Korszniak in their individual capacities without prejudice, and permit him to proceed on his claims against Nurse Voltz, Dr. Muhammad, and Dr. Kaminsky in their individual capacities at this time. However, Bonner may file an amended complaint in the event he seeks to amend his claims against Wetzel, Link, Buchler, Carla, and Korszniak in their individual capacities. If he chooses not to file an amended complaint, the Court will direct service on Defendants Nurse Voltz, Dr. Muhammad, and Dr. Kaminsky only.

BY THE COURT:

CYNTHIA M. RUFE, J.